1

2

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

3

Aug 27, 2019

SEAN F. McAVOY, CLERK

4

5

UNITED STATES DISTRICT COURT

6

EASTERN DISTRICT OF WASHINGTON

7

RACHEL D. BENJAMIN,

8

                    Plaintiff,

9

    v.

10

STEVENS COUNTY, a political
subdivision of the State of

11

Washington; PAT WALSH, an
employee of the Stevens County

12

Public Works Department; and
NADINE BORDERS, an employee

13

of Stevens County District Court,

14

                 Defendants.

NO:  2:18-CV-204-RMP

ORDER GRANTING DEFENDANTS'
MOTIONS FOR SUMMARY
JUDGMENT

15

16

      BEFORE THE COURT are three motions for summary judgment filed by

17

Defendants.  ECF Nos. 36, 39, & 44.  Defendant Pat Walsh moves for summary

18

judgment on Plaintiff Rachel D. Benjamin's claims under 42 U.S.C. § 1983,

19

negligent infliction of emotional distress, and negligence.  ECF No. 36.  Defendant

20

Stevens County moves for summary judgment on Ms. Benjamin's claims under

21

section 1983.  ECF No. 39.  Defendant Nadine Borders moves for summary

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY
JUDGMENT ~ 1

judgment on all of Ms. Benjamin's claims.  ECF No. 44.  Having reviewed the

briefing, the applicable law, and the record, the Court is fully informed.

## BACKGROUND

On August 4, 2015, Rachel Benjamin was convicted of driving under the

influence of alcohol in Stevens County District Court.  ECF No. 41-1.  She was

sentenced to 81 days in jail.  *Id.*  With the district court's permission, Ms. Benjamin

converted her jail sentence into a work crew sentence.  ECF No. 1 at 3.  She

completed 45 of her 81 assigned days of work crew from April to August of 2017.

ECF No. 41-2 at 3.

Defendant Pat Walsh worked as a work crew supervisor for Stevens County in

2017.  ECF No. 47 at 5.  He would drive the work crew van to the job sites and

manage the work crew workers, such as Ms. Benjamin.  *Id.*  Mr. Walsh was a

seasonal employee of Stevens County's public works department.  ECF No. 45-1 at

4.

Ms. Benjamin alleges that Mr. Walsh shared vulgar and repulsive stories with

her and the other members of the work crew throughout the summer of 2017.  Ms.

Benjamin testified that Mr. Walsh told them a variety of stories including about:  a

girl whose vagina was so smelly that he needed to spray air freshener in the work

crew van; a girl who previously worked in the work crew who wore a see-through

shirt so everyone would stare at her nipples; an employee of Stevens County who

liked to sleep around with younger men; his time in the Navy when he would have

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY
JUDGMENT ~ 2

1   threesomes; women constantly making sexual advances on him when he went out

2   shopping with his wife; a man so big in Hawaii that he could hold a woman in one

3   hand and have sex with her and hold his beer in the other; and other repulsive

4   comments regarding masturbation, sex, and other people's wives, daughters, and

5   girlfriends.  ECF No. 41-3 at 5–9; ECF No. 47 at 18–20.  She stated that Mr. Walsh

6   also would comment about the size of her breasts.  ECF No. 47 at 19.  Ms. Benjamin

7   claims that Mr. Walsh "singled her out" by having her sit in the front seat of the van

8   with him after Ms. Benjamin became carsick, and telling others that the front seat

9   was reserved for Ms. Benjamin.  *Id.* at 5.

10      Ms. Benjamin testified that Mr. Walsh's comments, stories, and behavior

11   made her feel uncomfortable and sexually harassed.  ECF No. 47 at 18.  Ms.

12   Benjamin testified that Mr. Walsh also touched her without her consent, including

13   brushing dirt and dust off her thigh, putting his hand on her back while they were

14   speaking, and grabbing her by the arm to recreate events in a story that Mr. Walsh

15   told.  ECF No. 38-3 at 22–23.  She does not allege that Mr. Walsh made any sexual

16   advances toward her.  However, she stated that Mr. Walsh would say that because he

17   was the supervisor for work crew, if Mr. Walsh did not like somebody, he could

18   report them to the district court, have their work crew status revoked, and have them

19   sent to jail.  *Id.* at 18–19.

20      Toward the end of the 2017 work crew season, Ms. Benjamin reported Mr.

21   Walsh's conduct to Defendant Nadine Borders.  ECF No. 41-3 at 10.  Ms. Borders is

1    the court administrator for Stevens County District Court.  ECF No. 45-1 at 2.  She

2    serves as the liaison between the district court and the work crew supervisor

3    regarding people who are sentenced to work crew, like Ms. Benjamin.  *Id.* at 3.

4    Even though she coordinates the work crew program for the district court, Ms.

5    Borders does not have the authority to discipline or fire work crew supervisors.  *Id.*

6    at 4–5.

7        When Ms. Borders heard from Ms. Benjamin what Mr. Walsh had been

8    saying to the work crew group, including comments about Ms. Borders and her

9    family, Ms. Borders told Ms. Benjamin that she was upset.  ECF No. 41-3 at 11.

10    Ms. Benjamin alleges that Ms. Borders told her that multiple people previously had

11    complained about similar conduct by Mr. Walsh.  ECF No. 47 at 14.  Ms. Borders

12    reported Mr. Walsh's conduct to his direct supervisor in public works, Kevin

13    Dionas.  ECF No. 45-1 at 4.  Mr. Dionas assigned an additional supervisor to work

14    with Mr. Walsh and monitor his behavior.  ECF No. 41-3 at 13; ECF No. 45-1 at 5.

15    Ms. Borders also set up a meeting between herself, Mr. Walsh, and the pastor of

16    their church to discuss the comments that Mr. Walsh made about Ms. Borders and

17    her family.  ECF No. 45-1 at 5–6.  After this meeting with their pastor, Ms. Borders

18    called Mr. Dionas and told him that she thought Mr. Walsh's conduct should be

19    taken very seriously.  *Id.* at 8.

20        Ms. Borders later received a phone call from Jason Hart, the public works

21    supervisor for Stevens County, who told her that an employee filed a formal

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY
JUDGMENT ~ 4

1  complaint against Mr. Walsh for conduct similar to the conduct reported by Ms.

2  Benjamin.  ECF No. 45-1 at 9.  The employee reported that she had been informed

3  that Mr. Walsh was saying vulgar things about the employee and the employee's

4  daughter.  ECF No. 41-5.  Shortly after the employee filed the formal complaint

5  against Mr. Walsh, Mr. Hart terminated Mr. Walsh's employment with Stevens

6  County.  ECF No. 41-8.

7       Ms. Benjamin filed a complaint against Stevens County, Mr. Walsh, Ms.

8  Borders, and Stevens County District Court Judge Gina Tveit, alleging that they

9  were liable to Ms. Benjamin for violations of her Fourth, Fifth, Eighth, and

10  Fourteenth Amendment rights under 42 U.S.C. § 1983, negligent and intentional

11  infliction of emotional distress, outrage, and negligence, all based on Mr. Walsh's

12  behavior and comments.  ECF No. 1.  The Court previously granted Judge Tveit's

13  motion to dismiss Ms. Benjamin's claims against her because the claims were barred

14  by judicial immunity or, alternatively, that Ms. Borders's complaint failed to state a

15  claim against Judge Tveit.  *Benjamin v. Stevens Cty.*, No. 2:18-CV-204-RMP, 2018

16  WL 4935448 (E.D. Wash. Oct. 11, 2018).

17       The remaining Defendants all moved for summary judgment in separate

18  motions.  ECF Nos. 36, 39, & 44.  Mr. Walsh moves for partial summary judgment

19  on Ms. Benjamin's section 1983 claims, negligent infliction of emotional distress

20  claim, and negligence claim.  ECF No. 36.  Stevens County moves for partial

21

summary judgment on Ms. Benjamin's section 1983 claims.  ECF No. 39.  Ms.

Borders moves for complete summary judgment.  ECF No. 44.

**LEGAL STANDARD**

A court may grant summary judgment where "there is no genuine dispute as

to any material fact" of a party's prima facie case, and the moving party is entitled to

judgment as a matter of law.  Fed. R. Civ. P. 56(a); *accord Celotex Corp. v. Catrett*,

477 U.S. 317, 322–33 (1986).  A genuine issue of material fact exists if sufficient

evidence supports the claimed factual dispute, requiring "a jury or judge to resolve

the parties' differing versions of the truth at trial."  *T.W. Elec. Serv., Inc. v. Pac.

Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  A key purpose of

summary judgment "is to isolate and dispose of factually unsupported claims."

*Celotex*, 477 U.S. at 324.

The moving party bears the burden of showing the absence of a genuine issue

of material fact, or in the alternative, the moving party may discharge this burden by

showing that there is an absence of evidence to support the nonmoving party's prima

facie case.  *Celotex*, 477 U.S. at 325.  The burden then shifts to the nonmoving party

to set forth specific facts showing a genuine issue for trial.  *See id.* at 324.  The

nonmoving party "may not rest upon the mere allegations or denials of his pleading,

but his response, by affidavits or as otherwise provided . . . must set forth specific

facts showing that there is a genuine issue for trial."  *Id.* at 322 n.3 (internal

quotations omitted).

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY
JUDGMENT ~ 6

1    The Court will not infer evidence that does not exist in the record.  *See*

2    *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990).  However, the Court

3    will "view the evidence in the light most favorable" to the nonmoving party.

4    *Newmaker v. City of Fortuna*, 842 F.3d 1108, 1111 (9th Cir. 2016).  "The evidence

5    of the non-movant is to be believed, and all justifiable inferences are to be drawn

6    in his favor."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### DISCUSSION

7

8    *Abandoned Claims*

9        In response to all three motions, Ms. Benjamin abandoned her claims based

10   on the Fourth Amendment, the Fifth Amendment, the Fourteenth Amendment, and

11   negligent infliction of emotional distress.  ECF No. 46 at 14; ECF No. 49 at 15;

12   ECF No. 52 at 14.  The Court dismisses these claims with prejudice.

13   *Judicial Immunity*

14       Ms. Borders argues that she is entitled to absolute quasi-judicial immunity

15   on all of Ms. Benjamin's claims.  ECF No. 44 at 12.  Mr. Walsh argues that he is

16   entitled to quasi-judicial immunity on Ms. Benjamin's section 1983 claim.  ECF

17   No. 36 at 25.

18       Judicial immunity completely shields a judicial officer from civil liability if

19   the judicial officer acts within the scope of the officer's judicial authority.  *Stump*

20   *v. Sparkman*, 435 U.S. 349, 355–56 (1978).  Judicial immunity applies to judicial

21   acts, not people.  *Forrester v. White*, 484 U.S. 219, 227 (1988).  For this reason,

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY
JUDGMENT ~ 7

1    judicial immunity "is not reserved solely for judges, but extends to nonjudicial

2    officers for 'all claims relating to the exercise of judicial functions'" in the form of

3    quasi-judicial immunity. *In re Castillo*, 297 F.3d 940, 947 (9th Cir. 2002) (quoting

4    *Burns v. Reed*, 500 U.S. 478, 499 (1991)).  Quasi-judicial immunity is appropriate

5    for non-judges when those people "exercise a discretionary judgment as a part of

6    their function." *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 436 (1993)

7    (internal quotations omitted).  Additionally, non-judges who simply enforce

8    facially valid court orders are absolutely immune from liability.  *Engebretson v.*

9    *Mahoney*, 724 F.3d 1034, 1039 (9th Cir. 2013).

10       Those people "who perform functions closely associated with the judicial

11   process" have been afforded quasi-judicial immunity.  *Cleavinger v. Saxner*, 474

12   U.S. 193, 200 (1985).  Prior examples of non-judges receiving quasi-judicial

13   immunity include prosecutors who prosecute a case, administrative law judges and

14   agency hearing officers performing adjudicative functions, agency officials

15   performing functions analogous to a prosecutor presenting evidence in an

16   administrative adjudication, and individuals vital to the judicial process including

17   grand jurors, petit jurors, advocates, and witnesses.  *Castillo*, 297 F.3d at 948.  The

18   person asserting judicial immunity has the burden of proving that judicial

19   immunity applies.  *Id.* at 947.

20       Ms. Borders claims that she is entitled to quasi-judicial immunity because

21   the actions supporting Ms. Benjamin's claims against Ms. Borders were all in her

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY
JUDGMENT ~ 8

1    role as the Stevens County District Court Administrator.  ECF No. 44 at 12.   She

2    argues that "the sentencing of offenders is an integral part of the judicial process."

3    *Id.*  Similarly, Mr. Walsh argues that Ms. Benjamin's section 1983 claims against

4    him are barred by quasi-judicial immunity because, as work crew supervisor, Mr.

5    Walsh ensured that people fulfilled their work crew sentence, which is "an integral

6    function of the courts."  ECF No. 36 at 26.

7         First, neither Ms. Borders nor Mr. Walsh exercised any discretionary

8    judgment like a judicial officer relative to Ms. Benjamin's claims against them.

9    Ms. Benjamin claims that Ms. Borders is liable for failing to act on Mr. Walsh's

10   inappropriate behavior.  ECF No. 52 at 8.  Ms. Benjamin also claims that Mr.

11   Walsh is liable for the inappropriate comments that he made.  ECF No. 49 at 14.

12   Ms. Borders and Mr. Walsh may have acted in their discretion when committing

13   these acts, but these acts are not typically done by judicial officers.  *See Antoine*,

14   508 U.S. at 436 ("When judicial immunity is extended to officials other than

15   judges, it is because their judgments are 'functional[ly] comparab[le]' to those of

16   judges." (brackets in original)).  Ms. Borders and Mr. Walsh did not exercise

17   discretionary judgment like a judicial officer when Ms. Borders allegedly did not

18   act on Ms. Benjamin's report or when Mr. Walsh acted with the alleged

19   inappropriate behavior.  Therefore, they are not entitled to quasi-judicial immunity

20   for those alleged acts.

21

1       Mr. Walsh and Ms. Borders argue that they also are entitled to quasi-judicial

2    immunity because they were executing the district court's order that sentenced Ms.

3    Benjamin to work crew.  ECF No. 36 at 26–27 ("Determining whether a defendant

4    fulfilled a judgment and sentence is an integral function of the courts that cannot

5    be accomplished unless work crew supervisors report attendance."); ECF No. 44 at

6    12 ("Because Ms. Borders was directed by the District Court Judge to monitor

7    compliance of the sentencing orders of the District Court she is entitled to quasi-

8    judicial immunity.").  In *Engebretson*, the Ninth Circuit afforded prison officials

9    quasi-judicial immunity when they incarcerated the plaintiff, who argued that he

10   was incarcerated in violation of his constitutional rights, because the prison

11   officials executed a facially valid judicial order when they took the plaintiff into

12   custody.  *Engebretson*, 724 F.3d at 1041.  Here, Ms. Benjamin does not challenge

13   her assignment to work crew; rather, she challenges the way she was treated by

14   Mr. Walsh during her work crew assignments and Ms. Borders's failure to act on

15   Mr. Walsh's conduct.  ECF No. 49 at 14; ECF No. 52 at 8.  Because Ms. Benjamin

16   does not challenge the fact that she was assigned to work crew, which would have

17   been a quasi-judicial action, Mr. Walsh and Ms. Borders are not entitled to quasi-

18   judicial immunity.

19       Ms. Borders's and Mr. Walsh's arguments regarding quasi-judicial

20   immunity center on the fact that they run and supervise the county's work crew

21   program, respectively.  ECF No. 36 at 26–27; ECF No. 44 at 12.  However, Mr.

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY
JUDGMENT ~ 10

Walsh and Ms. Borders do not receive quasi-judicial immunity by virtue of their participation in the judicial process. *See Forrester*, 484 U.S. at 227. Therefore, the Court does not recognize that either Ms. Borders or Mr. Walsh qualifies for quasi-judicial immunity in the context of these facts.

### Eighth Amendment Claim under Section 1983

All three Defendants move for summary judgment on Ms. Benjamin's Eighth Amendment claim under section 1983. ECF No. 36 at 17; ECF No. 39 at 8; ECF No. 44 at 16.

#### Qualified Immunity as to the Individual Defendants

Mr. Walsh and Ms. Borders argue that they are entitled to qualified immunity from the alleged Eighth Amendment violations.[1] ECF No. 36 at 25; ECF No. 44 at 12.

Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Saucier v. Katz*, 533 U.S. 194, 200 (2001) (internal quotes omitted) *abrogated in part on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009). When government officials invoke qualified immunity from suit, courts must decide the claim by applying a two-part analysis: (1) whether the conduct of the official, viewed in the light most favorable to plaintiff, violated a constitutional

---

[1] Stevens County did not argue qualified immunity because "[q]ualified immunity does not shield municipalities from liability." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011).

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT ~ 11

1    or statutory right; and (2) whether the right was clearly established at the time of the

2    alleged violation.  *See Pearson*, 555 U.S. at 232–36.  "[G]overnment officials

3    performing discretionary functions [are entitled to] qualified immunity, shielding

4    them from civil damages liability as long as their actions could reasonably have been

5    thought consistent with the rights they are alleged to have violated."  *Anderson v.*

6    *Creighton,* 483 U.S. 635, 638 (1987).  Qualified immunity gives government

7    officials "breathing room to make reasonable but mistaken judgments about open

8    legal questions."  *Ashcroft v. al-Kidd,* 563 U.S. 731, 743 (2011).

9         The order in which the district court addresses the two prongs of the qualified

10   immunity test should be flexible, considering the circumstances of each case.

11   *Pearson*, 555 U.S. at 236.  The Court begins by assessing whether Mr. Walsh's and

12   Ms. Borders's conduct, construed in the light most favorable to Ms. Benjamin,

13   violated a clearly established Eighth Amendment right.

14        A constitutional right is clearly established when a reasonable official would

15   understand that his or her actions are violating that right.  *Anderson*, 483 U.S. at

16   640.  When defining the right, the court must be specific and avoid defining the

17   right at a high level of generality.  *Ashcroft*, 563 U.S. at 742.  "The dispositive

18   question is 'whether the violative nature of *particular* conduct is clearly

19   established.'"  *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *Ashcroft*, 563

20   U.S. at 742) (emphasis in original).  "We do not require a case to be directly on

21   point, but existing precedent must have placed the statutory or constitutional

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY
JUDGMENT ~ 12

1  question beyond debate." *Ashcroft*, 563 U.S. at 741.  To show that a right is

2  clearly established, the exact behavior in question does not need to have been

3  previously ruled unconstitutional, "only that the unlawfulness was apparent in light

4  of preexisting law." *Blueford v. Prunty*, 108 F.3d 251, 254 (9th Cir. 1997).  In the

5  Ninth Circuit, "the plaintiff bears the burden of proving that the rights she claims

6  were 'clearly established' at the time of the alleged violation." *Moran v. State of*

7  *Wash.*, 147 F.3d 836, 844 (9th Cir. 1998).

8          The first step in determining whether a right is clearly established is to define

9  the right in question. *Ashcroft*, 563 U.S. at 741.  According to Ms. Benjamin, the

10  right that Mr. Walsh and Ms. Borders violated was the right to be free from verbal

11  sexual harassment and abusive statements while participating in court-assigned work

12  crew.  ECF No. 49 at 11–12.  Ms. Benjamin testified that Mr. Walsh forced Ms.

13  Benjamin to sit in the front seat of the work crew van, shared vulgar stories

14  involving sex, and commented on the size of Ms. Benjamin's breasts.  ECF No. 47

15  at 6, 10–11.  Additionally, she stated that Mr. Walsh touched her without her

16  consent, including brushing dirt and dust off her thigh, putting his hand on her back

17  while they were speaking, and grabbing her by the arm to recreate events in a story

18  that Mr. Walsh told.  ECF No. 38-3 at 22–23.  She does not allege that Mr. Walsh

19  made sexual advances toward her.

20          With the right being defined by Ms. Benjamin's allegations as to Mr. Walsh's

21  conduct, the next step is to determine whether that right was clearly established by

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY
JUDGMENT ~ 13

1    showing that existing precedent placed the constitutional question "beyond debate."

2    *Ashcroft*, 563 U.S. at 741.  The Ninth Circuit has held that "the Eighth Amendment's

3    protections do not necessarily extend to mere verbal sexual harassment." *Austin v.*

4    *Terhune*, 367 F.3d 1167, 1171 (9th Cir. 2004); *see also Blueford v. Prunty*, 108 F.3d

5    251, 254–55 (9th Cir. 1997); *Alverto v. Dep't of Corrs.*, No. C11-5572 RJB/KLS,

6    2012 WL 6025617, at \*21 (W.D. Wash. Nov. 15, 2012) *report and recommendation*

7    *adopted by* 2012 WL 6150043.  For this reason, several courts have dismissed

8    section 1983 claims based on verbal sexual harassment as a matter of law for failing

9    to state Eighth Amendment violations with the conduct alleged.  In *Austin*, the Ninth

10   Circuit dismissed an Eighth Amendment claim based on a corrections officer

11   exposing himself to an inmate for 30–40 seconds because there was no physical

12   touching.  *Austin*, 367 F.3d at 1171.  In *Blueford*, the Ninth Circuit found no Eighth

13   Amendment violation when a prison employee was alleged to have made strong

14   sexual suggestions, pulled inmates' hands toward his own genitals, grabbed his own

15   genitals and referred to oral sex, demanded anal sex, and feigned martial arts strikes

16   toward inmates' groin areas.  *Blueford*, 108 F.3d at 254–55.

17         The conduct that Ms. Benjamin alleges that Mr. Walsh engaged in on the

18   work crew assignments is not as egregious as the behavior in *Blueford* and does not

19   rise to the level of harassment required to establish an Eighth Amendment violation.

20   While the statements made and stories shared by Mr. Walsh are certainly abhorrent

21   and inappropriate, Ninth Circuit case law has not clearly established that his

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY
JUDGMENT ~ 14

behavior violates an inmate's constitutional rights.  *Cf. DeShaney v. Winnebago Cty.*

*Dep't of Soc. Servs.*, 489 U.S. 189, 202 (1989) (holding that not every act of

wrongdoing by a government official necessarily rises to a constitutional violation).

Ms. Benjamin argues that her right to be free from Mr. Walsh's harassment

has been clearly established giving Mr. Walsh and Ms. Borders fair warning that

their actions were unconstitutional.  ECF No. 49 at 13–14.  Ms. Benjamin makes this

assertion without citation to case law.  *Id.*; ECF No. 52 at 11.  At another point in her

briefing, Ms. Benjamin cites to *Rafferty*, a case in which the Sixth Circuit held that

"sexual abuse of inmates can violate the Eighth Amendment even in the absence of

physical touching by a corrections officer."  *Rafferty v. Trumbull Cty., Ohio*, 915

F.3d 1087, 1096 (6th Cir. 2019).  However, the conduct in that case involved a

corrections officer using his power and influence over an inmate to force her to show

him her breasts and masturbate in front of him.  *Id.* at 1091.  Here, Ms. Benjamin

does not allege anything similar to the plaintiff's allegations in *Rafferty*.[2]

---

[2] Ms. Benjamin also argues that society's "evolving standards of decency"
establish that Mr. Walsh and Ms. Borders violated the Eighth Amendment.  ECF
No. 49 at 11.  Eighth Amendment violations are determined by comparing the
alleged culpable conduct to "the evolving standards of decency that mark the
progress of a maturing society."  *Brown v. Plata*, 563 U.S. 493, 505 n.3 (2011).
Arguably, it maybe be contradictory to require Eighth Amendment violations to be
"clearly established" when the "evolving standards of decency" are always subject
to change.  However, in this case, Mr. Walsh's actions do not rise to the level of a
constitutional violation as established by Ninth Circuit law.

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY
JUDGMENT ~ 15

Ms. Benjamin has failed to show that Mr. Walsh's and Ms. Borders's conduct violated a clearly established constitutional right.  Accordingly, Mr. Walsh and Ms. Borders are entitled to qualified immunity, and the Court grants them summary judgment on Ms. Benjamin's section 1983 claim based on the Eighth Amendment.

### *Monell Liability as to Stevens County*

Stevens County argues that Ms. Benjamin cannot establish the pre-requisites of *Monell* to hold it liable under section 1983.  ECF No. 39 at 16.

A municipal body, such as a county or city, cannot be liable for constitutional violations under section 1983 unless the municipality itself committed the constitutional violation.  *Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. 658, 694–95 (1978).  Municipalities are not liable for their employees' unconstitutional acts by way of respondeat superior or vicarious liability.  *Id.*  A municipality is only liable under section 1983 if (1) the constitutional violation resulted from a government policy, practice, or custom; (2) the person who committed the harm was a person with final policy-making authority, meaning that the act itself constituted government policy; or (3) an official with final policy-making authority ratified the unconstitutional act.  *Id.*  A plaintiff must prove that one of the three *Monell* requirements is met to be successful in a section 1983 claim against a municipal body.  *See Bd. Of Cty. Comm'rs of Bryan Cty., Okla. v. Brown*, 520 U.S. 397, 403–04 (1997).

1    Ms. Benjamin argues that Stevens County is liable because Ms. Borders, a

2  person who Ms. Benjamin alleges had policymaking authority as the Stevens County

3  District Court Administrator, ratified Mr. Walsh's conduct by failing to stop it after

4  Ms. Benjamin reported his conduct to her.  ECF No. 46 at 13.  Additionally, Ms.

5  Benjamin argues that Mr. Walsh acted pursuant to an informal policy of permitting

6  sexual harassment by work crew supervisors.  *Id.* at 12–13.  Last, Ms. Benjamin

7  argues that Stevens County failed to train Mr. Walsh not to engage in sexual

8  misconduct.  *Id.* at 14.

9    A municipality can be liable for a single decision by one of its officers if the

10 decision was made by a person with final policymaking authority.  *Pembaur v. City

11 of Cincinnati*, 474 U.S. 469, 480 (1986) (plurality opinion).  Whether someone

12 possesses final policymaking authority for a municipal body is a question of state

13 law.  *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989).  The question of

14 final policymaking authority is specific to the particular area or particular issue

15 presented by the facts of each case.  *McMillian v. Monroe Cty., Ala.*, 520 U.S. 781,

16 785 (1997).  If the official does not ordinarily have final policymaking authority,

17 *Monell* is still satisfied if the plaintiff can show that a policymaking official

18 delegated policymaking authority to a subordinate or ratified a subordinate's

19 decision.  *City of St. Louis v. Praprotnik*, 485 U.S. 112, 126–27 (1988).

20    Ms. Benjamin argues that Ms. Borders "had prior notice of Mr. Walsh's

21 sexually harassing conduct" but took no action to stop it, effectively ratifying his

1    actions.  ECF No. 46 at 13.  However, Ms. Benjamin fails to allege that Ms. Borders

2    had final policymaking authority when it came to supervising Mr. Walsh or

3    terminating his employment for his behavior.  Ms. Borders avers that she is the

4    coordinator for Stevens County's work crew program but does not manage the

5    personnel employed by the County for the work crew assignments and was not Mr.

6    Walsh's supervisor.  ECF No. 45-1 at 2–3, 9.  Shortly following the events in

7    question, Mr. Walsh's employment with Stevens County was terminated by the

8    director of public works, Mr. Hart, not Ms. Borders.  ECF No. 41-8.  Ms. Benjamin

9    did not dispute these facts.  ECF Nos. 48 & 54.  The burden is on Ms. Benjamin to

10   prove that *Monell* liability is established, and without proof that Ms. Borders had

11   final policymaking authority over Mr. Walsh's employment or actions, Ms.

12   Benjamin cannot prove that Stevens County is liable for Ms. Borders's actions.

13   *Brown*, 520 U.S. at 403–04.  Therefore, even if Ms. Borders ratified Mr. Walsh's

14   actions, there is no genuine dispute of material fact that Ms. Borders lacked the final

15   policymaking authority over Mr. Walsh's employment or actions necessary to

16   trigger *Monell* liability.

17        Ms. Benjamin's second argument under *Monell* is that Stevens County had an

18   informal policy of permitting sexual harassment on work crew.  ECF No. 46 at 12–

19   13.  Absent a formal policy, a plaintiff claiming that an employee acted pursuant to

20   an informal policy or custom must prove that the practice is so "persistent and

21   widespread" that it constituted a "permanent and well settled . . . policy."  *Monell*,

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY
JUDGMENT ~ 18

436 U.S. at 691. "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). Official policies "may be inferred from widespread practices or 'evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded.'" *Nadell v. Las Vegas Metro. Police Dep't*, 268 F.3d 924, 929 (9th Cir. 2001) (quoting *Gillette v. Delmore*, 979 F.2d 1342, 1349 (9th Cir. 1992)) *abrogated on other grounds as recognized in Beck v. City of Upland*, 527 F.3d 853, 862 n.8 (9th Cir. 2008). "Proof of random acts or isolated events is insufficient to establish custom." *Navarro v. Block*, 72 F.3d 712, 714 (9th Cir. 1995). "A plaintiff cannot prove the existence of a *municipal* policy or custom based solely on the occurrence of a single incident of unconstitutional action by a non-policymaking employee." *Davis v. City of Ellensberg*, 869 F.2d 1230, 1233 (9th Cir. 1989) (italics in original).

Prior cases considering claims of informal policies, customs, or practices for the basis of municipal section 1983 liability all involve a long period of time in which the constitutional violations repeatedly occurred, the participation of multiple government actors without reprimand from supervisors, or an admission of an adherence to a longstanding unwritten practice. In *Hunter*, the Ninth Circuit held that the plaintiffs properly alleged an informal policy through the testimony of a

former county police officer who stated that there were 40 to 50 incidents of excessive force involving the county over a five-year period, during which the incidents involving the plaintiffs occurred. *Hunter v. Cty. of Sacramento*, 652 F.3d 1225, 1232–33 (9th Cir. 2011). In *Blair*, the plaintiff alleged an informal policy by providing evidence of a pattern of harassment by several different city police officers over the course of six months. *Blair v. City of Pomona*, 223 F.3d 1074, 1079–80 (9th Cir. 2000). In *Wallis*, the plaintiffs properly alleged an informal policy because several government workers admitted in discovery that the informal policy or practice existed, even though it was not written down. *Wallis v. Spencer*, 202 F.3d 1126, 1142–43 (9th Cir. 2000). In *Henry*, while the plaintiff only presented three instances of unconstitutional conduct by county sheriffs, the participation of several sheriffs and employees in the unconstitutional conduct was enough to support an informal policy of unconstitutional behavior. *Henry v. Cty. of Shasta*, 132 F.3d 512, 518–21 (9th Cir. 1997).

In contrast, when a plaintiff fails to provide evidence of a long period of constitutional violations, the participation of multiple government actors, or an admission of adherence to an informal policy, the informal policy claim fails as a matter of law. In *Meehan*, the plaintiffs failed to support an informal policy of assaults and harassment by county sheriffs because they only alleged constitutional violations against themselves, and three separate incidents was not enough to support an informal policy claim. *Meehan v. Cty. of L.A.*, 856 F.2d 102, 107 (9th

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT ~ 20

1  Cir. 1988).  In *Davis*, the plaintiff's informal policy claim was dismissed on

2  summary judgment because the plaintiff's "scanty facts and little detail" regarding

3  prior constitutional violations by the city's employees was not enough to prove the

4  existence of an informal policy.  *Davis*, 869 F.2d at 1234.

5      Ms. Benjamin claims that she has presented enough evidence of an informal

6  policy, practice, or custom by Stevens County because when she reported Mr.

7  Walsh's conduct to Ms. Borders, Ms. Borders admitted that other work crew

8  defendants previously had told her about his troubling conduct.  ECF No. 46 at 13;

9  ECF No. 47 at 14.  Ms. Benjamin cites to a letter written by an employee of Stevens

10  County in November of 2017, who stated that she learned that Mr. Walsh was saying

11  inappropriate things about her and her daughter to other members of the work crew

12  in the same time period that Ms. Benjamin worked with Mr. Walsh, to show that Mr.

13  Walsh's behavior was persistent enough to constitute an informal policy of Stevens

14  County.  ECF No. 41-5.

15      Taking these facts in the light most favorable to Ms. Benjamin, she has not

16  sufficiently alleged that Mr. Walsh was acting pursuant to an informal Stevens

17  County policy.  The alleged unconstitutional conduct was committed by a single

18  Stevens County employee.  There are no allegations that other Stevens County

19  employees sexually harassed people by sharing vulgar and inappropriate stories.

20  Further, even though Ms. Benjamin alleges that other people complained about Mr.

21  Walsh, no details or evidence was provided on those incidents sufficient to support

1    an informal Stevens County policy.  Ms. Benjamin's claim against Stevens County

2    is best described as "the occurrence of a single incident of unconstitutional action by

3    a non-policymaking employee," which is not enough to allege an informal policy to

4    establish *Monell* liability.  *Davis*, 869 F.2d at 1233.  Therefore, the Court finds that

5    Ms. Benjamin failed to establish enough evidence proving that Mr. Walsh acted

6    pursuant to a policy, custom, or practice.

7          Ms. Benjamin's third *Monell* argument is that Stevens County failed to train

8    Mr. Walsh not to sexually harass work crew employees.  ECF No. 46 at 14.  A

9    municipal body's failure to train its employees can establish liability under *Monell* if

10   the failure to train "amounts to deliberate indifference to the rights of persons with

11   whom the [employees] come into contact."  *City of Canton, Ohio v. Harris*, 489 U.S.

12   378, 388 (1989).  But the *Harris* standard is not met by "merely alleging that the

13   existing training program for a class of employees, such as police officers, represents

14   a policy for which the [municipality] is responsible."  *Id.* at 389.  The question is

15   whether "in light of the duties assigned to specific officers or employees the need for

16   more or different training is so obvious, and the inadequacy so likely to result in the

17   violation of constitutional rights, that the policymakers of the [municipality] can

18   reasonably be said to have been deliberately indifferent to the need."  *Id.* at 390.

19         "Whether a local government entity has displayed a policy of deliberate

20   indifference is generally a question for the jury."  *Oviatt v. Pearce*, 954 F.2d 1470,

21   1478 (9th Cir. 1992).  However, under *Harris* and its progeny, "one must

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY
JUDGMENT ~ 22

1    demonstrate a 'conscious' or 'deliberate' choice on the part of a municipality in

2    order to prevail on a failure to train claim." *Price v. Sery*, 513 F.3d 962, 973 (9th

3    Cir. 2008). This is an objective standard. *Castro v. Cty. of L.A.*, 833 F.3d 1060,

4    1076 (9th Cir. 2016). "Where a § 1983 plaintiff can establish that the facts available

5    to city policymakers put them on actual or constructive notice that the particular

6    omission is substantially certain to result in the violation of the constitutional rights

7    of their citizens, the dictates of *Monell* are satisfied." *Harris*, 489 U.S. at 396. A

8    plaintiff alleging failure to train must prove that (1) the defendant was deliberately

9    indifferent to the need to train the employees or the deficiencies in the employees'

10   training; and (2) the lack of training or deficient training caused the constitutional

11   violations. *Connick v. Thompson*, 563 U.S. 51, 59 (2011).

12       Ms. Benjamin alleges that Stevens County failed to train Mr. Walsh because

13   "there is no indication that Mr. Walsh was trained not to engage in sexual

14   misconduct." ECF No. 46 at 14. However, to properly allege a failure to train

15   theory, the plaintiff must show that the inadequate training was "program-wide" and

16   not limited to a single employee. *Alexander v. City & Cty. of S.F.*, 29 F.3d 1355,

17   1367 (9th Cir. 1994) *abrogated on other grounds as recognized in Perez Cruz v.*

18   *Barr*, 926 F.3d 1128, 1138 (9th Cir. 2019). The failure to train a single employee is

19   not enough to prove a municipal body's deliberate indifference to the need to train

20   its employees, and without showing deliberate indifference, there is no

21   unconstitutional policy that establishes *Monell* liability. *Id.* By merely alleging that

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY
JUDGMENT ~ 23

1    only Mr. Walsh was improperly trained, Ms. Benjamin has not supported that

2    Stevens County was deliberately indifferent to its need to train its employees not to

3    sexually harass people.  Therefore, the Court finds that Ms. Benjamin has failed to

4    support a failure to train claim against Stevens County.

5        Taking the facts in the light most favorable to Ms. Benjamin, her three

6    separate *Monell* theories fail as a matter of law.  Therefore, the Court grants Stevens

7    County summary judgment on Ms. Benjamin's section 1983 claim under the Eighth

8    Amendment.[3]

9    ***Negligence Claim Against Mr. Walsh and Ms. Borders***

10       Mr. Walsh and Ms. Borders move for summary judgment on Ms. Benjamin's

11   negligence claim.  ECF No. 36 at 27; ECF No. 44 at 19.

12       In an action for negligence, a plaintiff must prove four elements: (1) the

13   existence of a duty; (2) a breach of that duty; (3) a resulting injury; and (4)

14   causation.  *Ranger Ins. Co. v. Pierce Cty.*, 192 P.3d 886, 889 (Wash. 2008).  The

15   existence of a defendant's legal duty is a question of law.  *McKown v. Simon Prop.*

16   *Grp., Inc.*, 344 P.3d 661, 664 (Wash. 2015).  "A duty may be predicated on violation

17

18

19   _____

[3] Because Mr. Walsh and Ms. Borders received qualified immunity and because

20   Ms. Benjamin's *Monell* theories failed to establish Stevens County's liability, the
     Court does not consider whether any genuine issues of material fact exist on the

21   merits of Ms. Benjamin's Eight Amendment claims.

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY
JUDGMENT ~ 24

1    of either a statute or common law principles of negligence." *Alhadeff v. Meridian on*

2    *Bainbridge Island, LLC*, 220 P.3d 1214, 1222 (Wash. 2009).

3         Ms. Borders argues that Ms. Benjamin has not identified a duty that Ms.

4    Borders breached.  ECF No. 57 at 9.  Ms. Benjamin states that Ms. Borders "owed a

5    duty of care to not allow Mr. Walsh to engage in sexually harassing behavior against

6    Ms. Benjamin," without citation or reference to common law principles of

7    negligence or a statute that might create the duty.  ECF No. 52 at 12.  Without a duty

8    under which Ms. Benjamin may support her negligence claim against Ms. Borders,

9    her negligence claim fails as a matter of law.  *McKown*, 344 P.3d at 664; *Alhadeff*,

10   220 P.3d at 1222.

11        Even if Ms. Benjamin presented a duty, her negligence claim still fails against

12   Ms. Borders, as well as Mr. Walsh, because she failed to properly allege emotional

13   damages.  In negligence cases that claim only emotional distress damages, the action

14   is permissible if the emotional distress is "(1) within the scope of foreseeable harm

15   of the negligent conduct, (2) a reasonable reaction given the circumstances, and (3)

16   manifest [sic] by objective symptomatology." *Bylsma v. Burger King Corp.*, 293

17   P.3d 1168, 1170 (Wash. 2013).  To prove objective symptomatology, "a plaintiff's

18   emotional distress must be susceptible to medical diagnosis and proved through

19   medical evidence." *Hegel v. McMahon*, 960 P.2d 424, 431 (Wash. 1998).  Here,

20   Ms. Benjamin supports her negligence claim only with her own testimony about the

21   emotional distress she suffered.  ECF No. 49 at 15; ECF No. 53 at 12.  Without

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY
JUDGMENT ~ 25

proving her symptoms through medical evidence, Ms. Benjamin cannot support her negligence claim.

Ms. Benjamin failed to provide a duty that Ms. Borders or Mr. Walsh breached. Further, Ms. Benjamin has not proven her emotional damages with objective symptomatology. Therefore, Ms. Benjamin's negligence claims against Ms. Borders and Mr. Walsh are dismissed.

***Outrage Claim against Ms. Borders***

Ms. Borders moves for summary judgment on Ms. Benjamin's intentional infliction of emotional distress and outrage claim.[4]

To recover for emotional distress caused by a defendant's intentional conduct, a plaintiff must show (1) extreme and outrageous conduct; causing (2) intentional or reckless infliction of emotional distress; and (3) an actual result of severe emotional distress. *Rice v. Janovich*, 742 P.2d 1230, 1238 (Wash. 1987). "Liability exists only when the conduct has been so outrageous in character and extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community." *Repin v. State*, 392 P.3d 1174, 1185 (Wash. Ct. App. 2017). "[T]he emotional distress must be inflicted intentionally or recklessly; mere negligence is not enough." *Grimsby v. Samson*, 530 P.2d 291, 295

---

[4] Intentional infliction of emotional distress and outrage are synonyms for the same tort. *Kloepfel v. Bokor*, 66 P.3d 630, 631 n.1 (Wash. 2003).

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT ~ 26

(Wash. 1975).  Even if a person's actions constitute bad faith or malice, the actions would not support a claim of outrage.  *Dicomes v. State*, 782 P.2d 1002, 1013 (Wash. 1989).

Ms. Benjamin argues that her outrage claim against Ms. Borders should survive summary judgment because Ms. Borders was aware of Mr. Walsh's conduct and ignored it.  ECF No. 52 at 14.  Ms. Borders's knowledge of Mr. Walsh's conduct is not enough to sustain an outrage claim against Ms. Borders.  Ms. Benjamin does not submit any evidence to support or even allege that Ms. Borders engaged in any conduct that intentionally or recklessly caused Ms. Benjamin severe emotional harm.  *Rice*, 742 P.2d at 1238.  Additionally, the Court finds that failure to stop or report another employee's behavior cannot, in itself, be considered "so outrageous in character and extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community."  *Repin*, 392 P.3d at 1185.  Therefore, the Court grants Ms. Borders summary judgment on Ms. Benjamin's outrage claim.

Accordingly, **IT IS HEREBY ORDERED**:

1.    Defendant Pat Walsh's Motion for Partial Summary Judgment, **ECF No. 36**, is **GRANTED**.

2.    Defendant Stevens County Motion for Partial Summary Judgment, **ECF No. 39**, is **GRANTED**.

1     3.     Defendant Nadine Borders's Motion for Summary Judgment, **ECF No.**

2    **44**, is **GRANTED**.

3     4.     Plaintiff's 42 U.S.C. § 1983 and negligent infliction of emotional

4    distress claims against all Defendants are **DISMISSED with prejudice**.

5     5.     Plaintiff's negligence claims against Defendant Pat Walsh and

6    Defendant Nadine Borders are **DISMISSED with prejudice**.

7     6.     Plaintiff's outrage claim against Defendant Nadine Borders is

8    **DISMISSED with prejudice**.

9     7.     Judgment shall be entered in favor of Defendant Nadine Borders

10    against Plaintiff.  Ms. Borders shall be terminated as a defendant and removed from

11    the case caption.

12    **IT IS SO ORDERED**.  The District Court Clerk is directed to enter this

13    Order and provide copies to counsel.

14    **DATED** August 27, 2019.

15                      *s/ Rosanna Malouf Peterson*

                             ROSANNA MALOUF PETERSON

16                         United States District Judge

17

18

19

20

21